IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | Crim. No.: L-10-0119 |
| v. | : | |
| SHALABY PORTER, | : | |
| Defendant | : | |

o0o
## **MEMORANDUM**

Defendant Shalaby Porter is charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c). On May 27, 2010, Porter filed a Motion to Suppress Tangible and Derivative Evidence (Docket No. 23), seeking suppression of: (1) five vials of suspected cocaine recovered from one Gary Bracey; (2) a Bersa Thunder .380 caliber semi-automatic handgun recovered from the rear yard of 1616 Barclay St.; (3) a white bag containing two vials of suspected cocaine recovered from the steps of 318 East Lanvale St.; and (4) $293 in U.S. currency recovered from Porter during the search incident to his arrest. On November 3, 2010, a hearing was held, and on November 4, 2010, the Court issued an Order denying Porter's Motion. (Docket No. 37.) The Court now writes to explain its ruling.

I.  FACTUAL BACKGROUND

On June 9, 2009 at approximately 1:30 p.m., Detective Craig Streett of the Baltimore Police was conducting surveillance from the third floor of an abandoned house on the south side

1

of East Lanvale St. between Latrobe St., on the west, and Barclay St., on the east. From his position, he observed three men sitting on the steps of 318 East Lanvale, across the street. The identities of two of the men are unknown, but the third was Shalaby Porter. Twice as Streett watched, individuals would approach and hand one of the two unidentified men U.S. currency. One of the men would then cross Lanvale and go south on Latrobe, entering an alleyway behind the house where Streett was stationed.

Streett would go through the house and climb out a third-story window onto a section of roof, from which he could observe the alleyway and the backs of the adjoining houses. Each time, the unidentified man would enter the alleyway and proceed to the rear yard of 1616 Barclay St., where he would bend down, apparently retrieving a small object. He would then return to the steps of 318 East Lanvale, where he would pass something to the person who had provided the money. Based on his knowledge and experience, Streett identified these proceedings as hand-to-hand drug transactions.

A short while later, a man identified as Gary Bracey approached the group, and this time it was Porter who received the currency and set off for the rear yard of 1616 Barclay. Unlike the two men before him, however, Porter walked deeper into the yard and put down a black object, later recovered and identified as a Bersa Thunder .380 pistol. As Porter left the yard and returned to the steps of 318 East Lanvale, Streett saw for the first time that he was carrying a white bag. Porter handed some small objects to Bracey, who then began to walk away.

At this point Streett called in an arrest unit, which consisted of four officers in two unmarked police cars. As the cars approached, someone shouted "knockers," a term that Streett testified denotes plainclothes police. At this signal Bracey and Porter fled, Bracey on foot and Porter on a bicycle that had been parked in front of the steps. In the process, Porter threw the

white bag to the ground between the steps of 318 and 316 East Lanvale. Detectives Donald Hayes and Antonio Hopson chased Porter, apprehending him less than a block away. Hayes patted him down for weapons while Hopson, at Streett's direction, returned to retrieve the bag. Inside Hopson found two vials of what appeared to be cocaine. He returned to where Hayes had Porter detained, and directed that Porter was to be placed under arrest. Bracey was also apprehended and arrested, and both men were then searched. In Bracey's pocket police found five vials of what they believed to be cocaine, matching those found in the bag; in Porter's pocket was $293 in cash.

## II. DISCUSSION

### a. Cocaine Recovered from Bracey and Gun Recovered from 1616 Barclay

Porter's objection to two pieces of evidence may be dealt with summarily. He clearly lacks standing to challenge the introduction of either the vials of suspected cocaine seized from Gary Bracey or the handgun retrieved from the rear yard of 1616 Barclay St. The Fourth Amendment protects only a "subjective expectation of privacy that society recognizes as reasonable," and Porter had no reasonable expectation of privacy in either of these objects. Kyllo v. United States, 533 U.S. 27, 33 (2001).

It is well established that absent some special circumstance, a Defendant has no legitimate expectation of privacy in evidence seized from another person. "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." Alderman v. United States, 394 U.S. 165, 172 (1969); see also United States v. Taylor, 857 F.3d

3

210, 214 (4th Cir. 1988) (co-defendants lack standing to vicariously assert one another's Fourth Amendment rights). It seems clear that police had probable cause for their arrest and subsequent search of Bracey, but even if they did not, Porter may not challenge the fruits of that search.

Likewise, Porter has asserted no expectation of privacy in the rear yard of 1616 Barclay. He has not claimed 1616 Barclay as his residence, or advanced any cognizable argument as to why his Fourth Amendment rights were violated by the search of the yard.

Accordingly, Porter's motion to suppress the vials taken from Bracey and the gun found in the yard of 1616 Barclay must be denied.

### b. White Bag Recovered Near 318 E. Lanvale St.

Porter similarly lacks standing to challenge the introduction of the white bag police recovered from the sidewalk next to 318 E. Lanvale St. Porter claims that he was unlawfully seized before throwing down the bag and fleeing, and he cites as support the Supreme Court's decision in <u>California v. Hodari D.</u>, 499 U.S. 621 (1991). That case, however, clearly requires the opposite result. In <u>Hodari D.</u>, the Court ruled that for a seizure to occur there must be either the application of physical force or a show of authority to which the defendant submits. <u>Id.</u> at 625–26. The Court found that the Hodari D., who fled at the approach of an unmarked police car, was not seized until bodily tackled because, even assuming that the approach of the police could be considered a show of force, it was not one to which he submitted. As a result, the crack cocaine he had thrown away during his flight was admissible against him. <u>Id.</u> at 629.

The facts of this case are similar, with the distinction that the "show of force" in <u>Hodari D.</u> was more immediate and direct. Hodari D. jettisoned the drugs while the police were in hot pursuit and closing in on him. Porter discarded the white bag, mounted his bike, and pedaled away as soon as he heard someone call out "knockers." On these facts, it is hard to characterize

the officers' mere arrival in the vicinity to be a show of force. In any event, Porter, like Hodari D, did not submit to the show of force. Hence, Porter had not been seized when he discarded the bag, and the bag and its contents are admissible.

### c. $293 in Cash

Finally, Porter contends that he was arrested without probable cause, and that the $293 discovered when police searched his pockets was, therefore, obtained in violation of his Fourth Amendment rights.

Police may stop and briefly detain a person when there is "reasonable suspicion" that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). Warrantless arrests—and searches incident thereto—are permitted where there is probable cause to believe that a felony is being or has been committed by the arrested individual based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230–31 (1983). Probable cause is that which "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984).

In assessing the totality of the circumstances, it is appropriate to consider not only the officer's direct observations, but also "specifically: an officer's practical experience and the inferences the officer may draw from that experience, or the context of a high-crime area, or an individual's presence in a high-crime area coupled with his [h]eadlong flight upon noticing police." United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004) (internal citations omitted).

The testimony in this case establishes that the police initially seized Porter but did not immediately place him under arrest. Only when Officer Hopson returned from investigating the contents of the discarded white bag was Porter arrested and searched. Officer Streett's

observations prior to the arrest unit's arrival clearly supply the reasonable suspicion required for the initial seizure and, in the Court's opinion, probable cause for the arrest as well. But even assuming *arguendo* that probable cause was not established until Hopson's discovery of the suspected cocaine, that discovery was made and the information communicated to Officer Hayes before Hayes placed Porter under arrest. The arrest was therefore constitutional, and Porter's motion to exclude the fruits of the resulting search must be denied.

### III.　CONCLUSION

Because Porter lacks standing to challenge the introduction at trial of any evidence put forward by the Government except for the $293 in cash recovered from his person, and because that money was discovered during a search incident to a lawful arrest, his Motion to Suppress Tangible and Derivative Evidence must be DENIED.

Dated this 15th day of November, 2010.

/s/
Benson Everett Legg
United States District Judge